GEORGE B. CASSADY *vs.* OLD COLONY STREET RAILWAY
COMPANY.

KEZIA P. CASSADY *vs.* SAME.

Plymouth.    March 18, 1903. — September 3, 1903.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Negligence.    Street Railway.*

In an action against a street railway company by a passenger for personal injuries, the ordinary burning out of a fuse on an electric car is not *prima facie* evidence of negligence, but when there is evidence that the burning out of a fuse was attended by unusual results which would not have occurred if the fuse had been in proper condition, and that the fuse was so placed in the car that if there should be a harmful flame from its burning out it reasonably might be apprehended that the flame would reach and injure a passenger, there is evidence to go to the jury of negligence on the part of the defendant.

In an action against a street railway company for injuries from an explosion and flame attending the burning out of a fuse in a box placed directly under the seat of an open electric car on which the plaintiff was sitting, there was evidence which would warrant the conclusion that the intensity and duration of the flame produced by the explosion was greatly in excess of what could have been the result if the fuse had been in proper condition and that this imperfect condition of the fuse could have been discovered by the use of reasonable care. *Held,* that the defendant was not entitled to a ruling that the doctrine of *res ipsa loquitur* did not apply, and that the jury properly were instructed that it was for them to decide how far negligence could be inferred from the accident itself.

In a case where the doctrine of *res ipsa loquitur* applies, an unsuccessful attempt by the plaintiff to prove by direct evidence the precise cause of the accident does not estop him from relying on the inference of negligence from the accident itself.

In this action against a street railway company for injuries from an explosion and flame attending the burning out of a fuse in a box placed directly under the seat of an open electric car on which the plaintiff was sitting, it was held that the evidence stated by the court was sufficient to justify the jury in finding that the plaintiff was physically injured by the flame or electricity or both combined, and not merely frightened.

TWO ACTIONS OF TORT, the first by the husband of Kezia P. Cassady for consequential damages, and the second by Kezia P. Cassady herself for personal injuries from an explosion and flame attending the burning out of a fuse on an open electric car of the defendant on which the plaintiff was a passenger. Writ dated December 14, 1901.

In the Superior Court the cases were tried before *Hardy*, J., who refused twenty-one rulings requested by the defendant. The jury returned a verdict for the plaintiff in each case; and the defendant alleged exceptions.

*D. E. Hall,* (*H. F. Hurlburt* with him,) for the defendant.

*G. R. Swasey & T. H. Buttimer,* for the plaintiffs.

HAMMOND, J.   The first ground of defence is that there was no evidence of negligence of the defendant. It is conceded that the fuse burned out, but the defendant contends that the burning out of a fuse is not negligence *per se,* nor does it import negligence.

The box containing the fuse was fastened to the sill of the open car, at a place directly underneath the portion of the seat upon which Mrs. Cassady was sitting. A fuse consists of a piece of metallic alloy, similar in nature to soft solder, one or more inches in length, connected at each end with a small circular piece of copper. These pieces of copper are called the termi-

nals, and they are so cut that they can easily be slipped under the thumb screws and clamped in place. The fuse and thumb screws are held in what is called the fuse-box. A wire leading from one thumb screw up through the roof of the car to the trolley wire conducts the electricity from the trolley wire to the box. From the other thumb screw there is a wire leading to the motors. When the two screws are connected by the fuse there is a direct path for the electricity from the trolley wire to the motors. The purpose in using the fuse is to protect the wiring and the motors from an excessive current of electricity. It is constructed to withstand something less than the maximum current which the wires and motors are capable of carrying. When the current of electricity exceeds the maximum strength of the fuse, the metallic alloy melts with more or less of a report and flame and, the electrical path between the trolley wire and motors being thereby broken, the wire and motor are saved from possible harm. As the safety valve in a locomotive engine allows the escape of steam when the pressure is too strong for safety or for the ordinary operation of the engine, so in electric cars the fuse is used to protect the electrical mechanism from injury which might otherwise arise from the variations in the electrical current which are practically unavoidable in the operation of the trolley cars.

A fuse of the character above described is in general use upon cars run by electrical power. It is a safety device, and the evidence in this case shows that in view of the rapid action of electricity, the practical difficulty of controlling it at all times, the inability of the motorman to ascertain the amount of power upon the wires or on the motors, the variable weight of the load to be carried, the reasonably necessary conditions of the traffic as to weight of machinery and cost of transportation, it is a proper device. It is intended to prevent harm to the machinery which otherwise might result from the practically unavoidable fluctuations of the power. The fuse is expected to burn out when for any cause the electrical current exceeds its carrying capacity; and the evidence of the experts in this case shows that in the ordinary operation of cars properly wired and equipped, such an event is liable often to happen without negligence upon the part of any one. When, therefore, a fuse burns

out, it cannot be said that the connection between the occurrence and negligence is such as, in the absence of other evidence, to justify the conclusion that the result was due to negligence. As well might it be said that the escape of steam from the safety valve of a locomotive engine momentarily stopping at a station is evidence of negligence. The ordinary burning out of a fuse therefore is not *prima facie* evidence of negligence, and if there had been nothing else in this case the defendant would have been entitled to a verdict.

But the jury may properly have found that there was something else in this case. The expert evidence on both sides showed that the report, flash and vapor-like puff attendant upon the burning out of a fuse like this when in proper condition are instantaneous and harmless, and no physical injury either by burning or by an electrical shock could be expected to result therefrom. The evidence for the plaintiff tended, however, to show something more than a mere instantaneous, harmless flash. Upon this Mrs. Cassady testified as follows : " I was sitting on the car, and all at once a large flame of fire, or a blaze, came all over me, and I sprang off my seat and started to go out of the car on the other side of the car and a lady prevented me and pushed me back, and that's the last I remember until about three weeks afterwards, when I found myself in bed." · Her daughter, who was seated a few seats in the rear of the one upon which her mother sat, testified that she " saw a flash of fire come into the car right over my mother, on the left hand side ; and she sprang away from it. . . . The flame seemed to come up and over her ; to come from under the seat. . . . The duration of the flame was a few seconds " ; she could not tell how long it lasted, but it was long enough for her " to see it plainly come in the car and flash right over " her mother. " The flame only partly enveloped " the person of her mother ; " I should say it came over half of her face and body." Again she says : " As the car started up the hill there was this flash and flame. . . . I saw this flash or flame come up around or near my mother."

Henry O. Rideout, a witness called by the plaintiffs, testified that at the time of the accident he was driving a two-seated carryall, and that he " saw a flame and smoke come out of a

car ahead." He continued : "It might have been a flame of three or four seconds' duration. It came up over the side of the car, seemed to come from underneath, I don't know where. I was too far away to tell. . . . I was probably a hundred yards behind the car at the time. I was on the same side of the car that the flame was. . . . I noticed the flame more than I did the smoke. I can't say, from where I was, whether the flame went inside or within the car."

Henry A. Rideout, another witness called by the plaintiff, testified that he was the father of the preceding witness, and at the time of the accident was driving in a team ahead of his son ; and continued : "I saw a flash of light. . . . The car was ahead of me. I was driving towards it and was about the length of this room from it. I simply saw a flash of light and then I had to attend to my horse. . . . It was quite a flash of light come out near the front end of the car, I thought. My horse saw it, and of course shied, and I had to pay more attention to the horse. . . . I don't recollect seeing any smoke."

As to the witnesses called by the defendant, one Thompson testified that he was sitting directly opposite the female plaintiff ; and continued : " As the car was going the fuse blew out. . . . There was a kind of a puff and there was some smoke kind of come into the car ; looked to me like smoke. Everybody jumped. I jumped. There was this smoke and, I suppose, flame together, but I did n't notice much flame." On cross-examination he said : "My clothing was not burned and I never told anybody that it was. It might have been scorched : I smelled the scorch of it."

One Hunt, who was seated by the side of the preceding witness, did not notice any smoke, vapor or flame.

The conductor on the car testified that at the time he was standing on the running board on the right hand side of the car, at about the fifth seat from the front, collecting fares ; heard a slight noise, did not turn around instantly, but soon turned and saw no flame but only " a slight vapor."

One McPhee testified that he was four hundred or five hundred feet behind the car at the time the fuse burned out. The first thing which attracted his attention was the stopping of the car, and he saw no flash or flame.

So much as to the testimony of the witnesses as to what they saw at the time.

There was evidence also tending to show that the flame existed long enough to burn. The jury may have believed that holes were made by the flame in the veil worn by Mrs. Cassady at the time of the accident. The daughter testified that she went to her mother while in the car immediately after the accident, and that she then noticed that little red blotches were breaking out all over her mother's face; that while bathing her mother's face a few hours afterwards at home, she noticed a " fine red mark - about an inch or an inch and a half long," near her mother's left eye, and that her eyebrows appeared as if they had been " scorched or burned off," and that there was a very slight appearance of scorching of hair elsewhere near the face.

Margaret Pierce, called by the plaintiffs, testified to the existence of " red marks or spots " on the left side of the eye and just above the eye, and to the scorched appearance of the eyebrows and hair. The evidence as to these spots and marks was confirmed by several other witnesses. The plaintiffs contended that these holes in the veil, these spots and marks upon the face, and this scorching of the eyebrows and hair were caused by the flame. It is true that the expert testimony for the defence tended to show that there could have been no such flame, and hence that there could have been no such burning, but an irreconcilable conflict between what eye witnesses say they saw and what expert witnesses say could not have happened is not unusual in the trial of causes; and within reasonable limits the jury may decide upon which they will rely. The jury upon the evidence may have found that the flame in this case was not the instantaneous and harmless flame which results from the burning out of a fuse when in proper condition; that the burning of this fuse was attended with unusual results which would not have occurred if the fuse had been in proper condition, and that the most reasonable conclusion was that if proper care had been exercised there would have been no such flame. We cannot say that such a conclusion was not warranted by the evidence.

Moreover there is another feature in this case of some importance. This was an open car, and this fuse box was placed

directly under a seat intended for passengers, so that if, for any reason, there should be a harmful flame resulting from the burning out of a fuse, it might be reasonably apprehended that it would reach and injure a passenger. While therefore the mere burning out of a fuse properly located and in proper condition does not of itself import negligence on the part of the defendant, still, if the fuse be so located as by its burning out to injure a passenger, such a location may be inconsistent with the degree of care which a common carrier owes to its passengers. It would be something like arranging the safety valve of a locomotive engine so that the escaping steam might reach a passenger in his seat. Upon the whole, we think that the plaintiff had a right to go to the jury on the question of the negligence of the defendant.

It is very strongly urged by the defendant that in a case like this the doctrine of *res ipsa loquitur* does not apply, and in its sixteenth request it asked for an instruction to that effect. The judge instructed the jury that the mere fact that the accident occurred is not in and of itself as matter of law *prima facie* evidence of negligence; and continued as follows: " That is, you cannot assume, just because an explosion may have occurred in connection with the testimony in this case and the procedure in this case, that that is of itself negligence as matter of law. I cannot instruct you, as matter of law, that you are to find that *prima facie* evidence of negligence. But it is some evidence of negligence. It is for you to consider that as evidence tending to show negligence, but it is a question of fact for you to decide how far that shows negligence." There was no error in refusing to give the ruling requested. There was evidence, as above stated, which would warrant the conclusion that the intensity and duration of the flame produced by this explosion was greatly in excess of what could have been the result if the fuse had been in proper condition, and that this imperfect condition of the fuse could have been discovered by the use of reasonable care. Such being the case, the defendant was not entitled to the ruling requested. And the jury were properly instructed that the matter was before them to decide how far negligence could be inferred from the accident itself. If the defendant desired to call the attention of the court to the precise phase of the testimony

where the principle would not apply, it should have done so more distinctly.

The defendant also contends that even if originally the doctrine would have been applicable, the plaintiff had lost or waived her rights under that doctrine, because instead of resting her case solely upon it she undertook to go further and show particularly the cause of the accident. This position is not tenable. It is true that where the evidence shows the precise cause of the accident, as in *Winship* v. *New York, New Haven, & Hartford Railroad*, 170 Mass. 464, and *Buckland* v. *New York, New Haven, & Hartford Railroad*, 181 Mass. 3, and similar cases, there is of course no room for the application of the doctrine of presumption. The real cause being shown, there is no occasion to inquire as to what the presumption would have been if the cause had not been shown. But if at the close of the evidence the cause does not clearly appear, or if there is a dispute as to what it is, then it is open to the plaintiff to argue upon the whole evidence, and the jury are justified in relying upon a presumption unless they are satisfied that the cause has been shown to be inconsistent with it. An unsuccessful attempt to prove by direct evidence the precise cause does not estop the plaintiff from relying upon the presumptions applicable to it.

The defendant strenuously contends that there was no evidence of physical injury either by the flame or by electricity, and that the sufferings of the plaintiff were due simply to fright. It would not be profitable to recite further in detail the evidence bearing upon this question. The charge to the jury was sufficiently full and clear upon this point, and while a decision for the defendant might reasonably have been expected, still we cannot say that the jury could not find upon the evidence that the plaintiff was physically injured by the flame or electricity, or both combined.

It was within the discretion of the judge to allow the question to be put to Morse the expert, concerning the possibility of an electric shock.

No error appears in the manner in which the judge dealt with the requests of the defendant.

*Exceptions overruled.*