Bernice Wilson, Appellant, v. East St. Louis and Interurban Water Company, Appellee.

Opinion filed June 6, 1938.

MacDonald, Meyer & Meyer, of East St. Louis, for appellant.

Pope & Driemeyer, of East St. Louis, for appellee.

Mr. Justice Murphy delivered the opinion of the court.

This is an appeal from a judgment entered on a directed verdict for the defendant in a suit to recover damages for personal injuries.

The defendant, a public utility company, furnishing water to the inhabitants of the city of Belleville, installed a meter box in a dirt sidewalk in the public street in front of plaintiff's home. A little after 8 p. m., June 10, 1937, plaintiff when leaving her home to go to a nearby store, stepped on the covering of the manhole where the meter box was located. The lid to the covering tilted causing her to fall and resulted in the injuries for which she claims damages in this suit.

The court reserved its ruling on defendant's motions for a directed verdict until after the jury had returned a verdict in favor of the plaintiff for $950. The only questions raised on this appeal are as to the correctness of the court's ruling in allowing the motion and

its refusal to grant plaintiff leave to amend her complaint after verdict and before judgment.

The negligence alleged in the complaint is that the defendant carelessly and negligently permitted the cover over the manhole to become defective and loose so as to be hazardous to persons using said sidewalk.

The covering to the manhole is described by the evidence as being in two parts, the metal rim which fits around the end of the tile which stands perpendicular and in which the meter is located, and the metal lid which sits in the rim. When in place the top of the cover was about flush with the surface of the ground. The total weight of the rim and lid was 51 pounds, the lid weighing 13 pounds. There were no fastenings holding the lid in the rim but when it was fully seated in the rim it fitted fairly snug. On the lower side of the lid there were eight lugs approximately an inch in length which were located near the outer edge of the rim. Defendant contends that when the lid was seated in the rim the lugs prevented it from tilting or rising when pressure was unevenly applied on the upper surface. When the lid was seated in the rim its upper surface was about even with the upper surface of the rim. To remove the lid from the rim it had to be raised upward at least even with the upper surface of the rim.

Plaintiff testified that at the time of the accident it was dark, that she started to cross the walk and stepped on the lid, that it gave way beneath her weight, permitting her left leg to go down into the meter box and causing her to fall. Witness Foal called by the plaintiff, stated that he heard plaintiff moaning and crying, that he went to the scene of the accident and assisted her from the hole and into her house, that at that time the lid was about 15 inches from the meter box.

It is conceded that defendant's employee, John Schrand, read this meter about 11:30 the date of the

accident, he testified that he lifted the lid by means of a special rod he carried for that purpose, that after reading the meter and making a record of the same he replaced the lid in the rim and stepped on it with one foot to make certain that it was secure.

Ralph Smith called by the plaintiff stated that he saw Schrand reading the meter, that Schrand lifted the lid, recorded the reading and then started a conversation with a passer-by giving the lid a push with his foot. Smith also testified that he left the vicinity of the meter box before Schrand, that when he returned an hour later the lid over the meter box was up an inch and a half or two inches and that he pushed it down with his foot.

The lid and rim were exhibited to the jury and various demonstrations were made by both parties in explanation as to the position the lid would have to be before it could be tilted by a person stepping on it.

Foal testified that after he assisted plaintiff into her home he returned to the meter box and placed the lid in the rim and tried without avail to tilt the lid by stepping on it. Witness Thompson testified that the day following the accident the lid was raised on one side about an inch, that he stepped on it and that it was dislodged and slid out of the rim. Defendant's witness, Ridgeway, testified that he was supervisor of the meter department of the defendant, that several years prior to the accident he designed the coverings for defendant's meter boxes and that the one in question was of such type, that when the lid was fully seated in the rim it would not tilt or move when a person stepped on it. He admitted that if the lid was raised on one side three-quarters of an inch or more it would be possible to tilt it.

There is no evidence tending to prove any defect in the lid or rim or any fault in the construction or type of cover used, neither is there any evidence tending to prove that the lid was raised at the time of the accident

by reason of accumulation of dirt or other foreign substance in the rim.

The evidence shows that plaintiff's fall was caused by the lid tilting and the evidence is conclusive that the lid would not tilt or slip from the cover by a person stepping on it unless it was raised from the seat in the rim on at least one side. From these deductions it follows that the query is what caused the lid to raise permitting it to tilt when plaintiff stepped on it. Plaintiff's witness Smith, first testified to a state of facts that would tend to prove that Schrand when reading the meter was negligent in the replacement of the lid but Smith also testified that after Schrand replaced the lid he (Smith) found it raised and pushed it down with his foot. Smith's action in pushing the lid into place cut off all causal connection between Schrand's negligent act and the injury so that Schrand's negligence could not have been the proximate cause of the lid tilting. There is no other evidence that defendant or its employees did anything to the lid after Smith pushed it down and before plaintiff's accident. Therefore there is no evidence which tends to prove plaintiff's charge that defendant negligently and carelessly permitted the cover to become defective and loose.

Plaintiff urges in the alternative that even though it may be considered that there is no evidence tending to prove the negligence of the defendant that the doctrine of *res ipsa loquitur* applies and that the motion for a directed verdict should have been overruled on that theory.

The doctrine of *res ipsa loquitur* is grounded upon the principle that whenever a thing which produces an injury is shown to have been under the control and management of the defendant and the occurence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford prima facie evidence to

support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care. The presumption or inference of negligence raised by the application of this doctrine is not absolute or conclusive but is rebuttable, and vanishes entirely when any evidence appears to the contrary. *Bollenbach v. Bloomenthal,* 341 Ill. 539.

As pointed out the direct cause of the lid tilting was the fact that it was raised out of its seat in the rim. The mere fact that plaintiff fell by stepping on the manhole covering does not make the doctrine of *res ipsa loquitur* applicable. The inference of negligence must arise not from the mere fact that plaintiff was injured but from the circumstances under which it occurred. Since the evidence shows that the lid would not have tilted unless it had been raised from its seat in the rim then we can only conjecture as to what caused it to be raised. Smith having pushed it down, it could only have been raised by force and there is nothing in the evidence or circumstances surrounding the injury that warrants the inference that that force was applied by defendant or its employees. It cannot be logically said that the fact that the defendant by its answer admitted that it owned and controlled the covering over the meter box, that therefore the inference arises that it negligently raised the lid making it possible for it to tilt. Neither can it be said that an inference of negligence arises from the fact that defendant did not make an examination of the lid between the time when Smith pushed it down and when the accident happened nine hours later.

One of the essential elements of the doctrine of *res ipsa loquitur* is that it must appear that the one whose negligent act has caused the injury had such control and management over the instrumentalities causing the injury that the defendant would be in a better position to explain the cause of the act causing the in-

jury than the person injured and the burden is cast on the defendant to explain it and to show it was not his negligence that caused the injury. Under the evidence in this case the defendant was in no better position to know what caused the lid to rise than was the plaintiff.

Furthermore if the facts and circumstances are sufficient to raise an inference of negligence then it must also show at least by inference that such negligence was the act of the defendant otherwise the negligence of the defendant does not become the proximate cause of the injury. In this case there may be an inference that some one was negligent in leaving the lid raised but no inference arises that the lid was raised by the defendant to the exclusion of an outside agency.

The motion for a directed verdict was properly allowed.

Plaintiff's proposed amendment to her complaint was unnecessary in a consideration of the questions raised on the motion for a directed verdict. The application of the rule of *res ipsa loquitur* was a matter of evidence and not of pleading. Plaintiff's original complaint contained the allegation that there was a duty resting on the defendant to use due care in the keeping of said covers in place on said manhole and it was followed by the allegation that by reason of the defective and loosened condition of the cover plaintiff was injured. The proposed amendment could not have aided plaintiff's case on the questions raised on the motion of a directed verdict.

The judgment of the trial court is affirmed.

*Judgment affirmed.*