A. SHAPIRO REALTY CORPORA-
TION, Plaintiff-Appellant,

v.

BURGESS BROTHERS, INC.,
Defendant-Appellee.

A. SHAPIRO & SONS, INC.,
Plaintiff-Appellant,

v.

BURGESS BROTHERS, INC.,
Defendant-Appellee.

Nos. 73–1155, 73–1156.

United States Court of Appeals,
First Circuit.

Argued Nov. 8, 1973.

Decided Feb. 11, 1974.

Albert P. Zabin, Boston, Mass., with whom Schneider & Reilly, Inc., Boston, Mass., was on brief, for plaintiffs-appellants.

Thomas R. Morse, Boxborough, Mass., with whom Philander S. Ratzkoff, Boston, Mass., was on brief, for defendant-appellee.

Before COFFIN, Chief Judge, and McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiffs (collectively "Shapiro") owned two buildings in North Adams, Massachusetts, the "Old Eagle Mill" and an adjacent modern structure built in the 1950's. Shapiro hired defendant Burgess, a Vermont wrecking firm, to tear down the Old Eagle Mill, under a contract which called for Burgess to leave the newer building intact. While Burgess was engaged in wrecking the older building, a fire suddenly occurred destroying both buildings. Shapiro brought a diversity action for damages against Burgess in the district court. The jury returned a verdict for Burgess.

The only issue raised on appeal is the adequacy of the court's charge on Shapiro's negligence claim. The court gave a normal negligence charge. It instructed that Shapiro had to prove that it was more likely than not that the fire was proximately caused by Burgess' negligence, and that proof of negligence could be by direct evidence or could be in the form of reasonable inferences drawn from proven facts.[1] The court instructed that there could be no inference of negligence from "the mere fact an accident happened, considered alone, and standing by itself."

Shapiro registered a timely objection both to the last-mentioned instruction, and to the court's failure to give requested instructions.[2] Under these, the jury would, in essence, have been told

---

[1] ". . . in addition to the testimony of the witnesses and the facts established by your taking a look at the site, and examining the exhibits admitted in evidence which you have available to you, you are permitted to draw such reasonable inferences as seem advisable to you in the light of your experience, and common sense."

"An inference is not a guess, a surmise, or speculation, it is a deduction, a conclusion which reason and common sense leads a jury to draw from facts which are proven."

"Speaking of proving facts in issue in a case, they may be proven either by direct evidence of those facts or by circumstantial evidence of the facts."

"When I later in this charge tell you the plaintiff must prove three propositions to be more likely so than not, I want to tell you the plaintiff may prove these three things by direct evidence from what the witness says or by proving other facts from which you may reasonably infer the existence of those facts which is a way, I suppose, of telling you that either direct or circumstantial evidence can be used to prove facts."

"Direct evidence is what I have already indicated, the lay witness telling you what he learned by using his eyes or ears or any of his five senses."

"Circumstantial evidence is indirect evidence consisting of proof of certain facts from which a jury may properly infer the existence of still other facts which other facts usually and reasonably follow from the existence of those facts which have been directly proved."

"Incidentally, I am going to tell you that one of the things the plaintiff must prove to be more likely so than not is that the fire was caused by the negligence of the Burgess Brothers or an employee of the Burgess Brothers."

"When I tell you the plaintiff must prove it is more likely so than not that the cause of the fire was a negligent act on the part of someone for whom the Burgess Brothers are responsible, I do want to call to your attention at this time that the plaintiff does not have to exclude every other possibility. The plaintiff does have to prove a negligent act was probably the cause of this conflagration.

\*     \*     \*     \*     \*     \*

"Your verdict must be based on what you find to be the credible or believable evidence as you recall it, supplemented by such inferences as your judgment, experience and plain common sense tells you to draw from those sources."

[2] Shapiro's requests for instructions, as filed with the court, were as follows:

"Request No. 2—It is conceded that there was no fire at the time that possession and control of the old mill was surrendered to

that it might infer Burgess' negligence from its exclusive control of the premises or that the burden was on Burgess to prove due care.

The facts can be summarized briefly: Burgess began to dismantle the four story Old Eagle Mill in December of 1970. By the day of the fire, March 31, 1971, much of its floors and much of the roof over the wing had been removed. Debris was piled in the basement. Elsewhere were several bales of rags, some broken carts, and perhaps barrels. There were no known inflammables anywhere. Burgess' men did not smoke and brought to the site no torches requiring gas or other volatiles. Shapiro had responsibility under the contract for shutting off utilities. An electrician had appeared a week or so before the fire to turn off the power, and a day before the fire someone from the gas company came and was understood to have capped the gas line in the basement. Mr. Shapiro testified that his personnel did not go into the Old Eagle Mill, although it was disputed whether fire doors between the new and old buildings had been locked. There was easy ingress to the Old Mill through open outside doors, and most of the windows were out.

On the day of the fire, Mr. Shapiro and his son went by the Mill, looked in, and left. Burgess' men were at work in or near the wing area. They had just removed an elevator from the shaft, using a crane to which was attached a clamshell bucket, when a loud noise was heard. Burgess' employees went outside to investigate, and some minutes later saw smoke from the top of the exposed elevator shaft. They ran to sound the alarm, and soon found the lower floors of the main section of the Mill to be in flames. There were several explosions. Almost instantly the Mill and the adjoining new building were engulfed. After the fire, nothing remained to tell how it began. No likely source of spontaneous combustion was identified. Except for the Shapiros, father and son, who, while smokers, had not actually entered the Old Mill and had left several hours before the fire, only Burgess' men were known to have been on the premises. However, onlookers were observed on nearby streets prior to the fire.

Plaintiffs' experts testified that the most probable cause of the fire was a dust explosion ignited by sparks from the clashing of the metal jaws of the clamshell. Although the clamshell had

the Defendant. Therefore, the Defendant has the burden to prove by fair preponderance of the evidence that it has exercised due care to prevent the loss or destruction of the Plaintiff's buildings and property in the buildings.

> Knowles v. Gilchrist Company, et al., 72 Adv.Shts. 1783 [289 N.E.2d 879] (Mass. 1972)

"Request No. 2A—If you find that the Defendant had exclusive control and possession over the old mill at the time that the fire broke out and if you find that under the circumstances under which the fire broke out were such that it is probable that but for the negligence of someone that fire would not have occurred and you further find that the fire did not occur through the negligence of the Plaintiff, then you may conclude that the fire occurred because of the negligence of the Defendant.

> Edmonds v. Heil, 333 Ill.App. 497 [77 N.E. 2d 863]; Oakdale Building Corporation v. Smytherine [Smithereen] Co., 322 Ill. App. 222, 54 N.E.2d 231 (1944)

"Request No. 3—The plaintiff has advanced the theory that the fire was caused by a dust explosion which occurred because the Defendant failed to take reasonable measures to prevent the formation of flammable dust clouds in the course of the demolition. Even if you do not accept this explanation put forth by the Plaintiff through its lay and expert witnesses, you are not precluded from finding that the Defendant's negligence was the proximate cause of the fire if you find that a fire under the circumstances in which it occurred would not have occurred without the negligence on the part of some person and that the Defendant had exclusive control over the building in which the fire originated.

> Cassady v. Old Colony Street Railway Co., 184 Mass. 156 [68 N.E. 10]; Cleary v. Cavanaugh, 219 Mass. 281 [106 N.E. 998].

"Request No. 4—If you find that the negligence of the Defendant created a hazardous condition from which a fire could have started, the Plaintiff need not show in order to prevail in this case the exact cause of the fire in order to establish the Defendant's liability for the damage caused by that fire.

> Erbetta v. Gibbs Oil Company, 32 Mass. App.Dec. 123 (1964)."

been working on the upper stories of the wing, and the fire was first seen on lower stories of the main part of the Mill, it was theorized that a dust explosion chain could have ignited the lower part. Burgess' expert impressively disputed the theory,[3] but could come up with none of his own, other than that the debris piled in the basement was somehow ignited. There was a dispute whether good practice called for wetting down the areas being demolished as a safety precaution; Burgess had not done so. A demolition expert called by Burgess testified that he never knew of dust explosions when dismantling buildings, and that wetting down was done for environmental, not safety, purposes, and then only in the summer.

We conclude that Massachusetts law gave the plaintiff no right to instructions beyond those given. The court, apparently responding in part to plaintiff's proffered instructions, told the jury in understandable language that it could rely on circumstantial evidence as proof of negligence and that the plaintiff had to establish merely that defendant's negligent act was probably the cause of the fire. The court did not limit the jury to the dust explosion theory. Its instructions correctly permitted recovery on "a more generalized inference of negligence" as well as on the particular theory advanced. *See* United States v. Hull, 195 F.2d 64, 65 (1st Cir. 1952); Cassady v. Old Colony St. Ry., 184 Mass. 156, 68 N.E. 10, 12–13 (1910).

■ *Res ipsa loquitur* subsumes a variety of subtly different concepts; for this reason, commentators and courts have retreated from the term. *See* Gelinas v. New England Power Co., 359 Mass. 119, 268 N.E.2d 336, 338 (1971). In Massachusetts the doctrine never causes a shift in the burden of proof, and in recent times has simply been described as

> "whether the evidence, considered in its entirety and in its light most favorable to the plaintiff, was sufficient to permit the jury as the trier of facts to infer that some negligent act or omission by the defendant caused the injuries sustained by the plaintiff. The test is not whether the evidence was such that it required the jury to infer negligence by the defendant, but only whether it was sufficient to permit such an inference." Gelinas v. New England Power Co., *supra*, 268 N.E.2d at 338–339.

Here plaintiffs "got to the jury", United States v. Hull, *supra*, 195 F.2d at 66; but they say the doctrine entitled them to have the judge tell the jury that, in essence, negligence could be inferred from defendant's control and possession of the Old Mill at the time of the fire.[4]

The plaintiffs might be right if logic or the law plainly gives rise to such an inference.[5] While there is little authority on when a *res ipsa* instruction is required, we assume that in a sufficiently clear case, upon request, an instruction

---

3. The length of time between the first crash and the fire was, he testified, too great; moreover, there was no roof over much of the area where the clamshell was working, hence no enclosed space for a dust cloud to form.

4. We so characterize the requests for simplicity's sake. We recognize that there was more to them; they appear in the margin, *supra*.

5. For example, the escape of gas from a main has long been recognized as some evidence of the utility's negligence, *see* Smith v. Boston Gas Light Co., 129 Mass. 318 (1880). In the case of a passenger, the fact of an accident may evidence a common carrier's negligence, *see* Patton v. Texas & Pac.

Ry., 179 U.S. 658, 665, 21 S.Ct. 275, 45 L. Ed. 361 (1901). The mere starting of a factory machine without human agency may evidence an employer's negligence. Ryan v. Fall River Iron Works Co., 200 Mass. 188, 86 N.E. 310 (1908). Beyond such sanctioned rules of thumb, sometimes based on policy, are occurrences giving rise to obvious, common-sense inferences of negligence. Had Burgess' crane dropped bricks on a passerby, negligence might be inferred from the fact of the accident coupled with Burgess' exclusive control of the crane; and, upon request, the jury should be instructed of its right to draw the inference. Restatement (Second) Torts § 328D, comment g. *Cf.* Pelland v. D'Allesandro, 321 Mass. 387, 73 N.E.2d 590, 591 (1947).

must be given. *Cf.* Ryan v. George L. Lilley Co., 121 Conn. 26, 183 A. 2 (1936) and Annot., 173 A.L.R. 880 (1948).

■ But there was here no such readily discernible connection between the fire and Burgess' responsibilities as to require a special instruction. While the sum total of circumstantial evidence would have supported a plaintiff's verdict had there been one, no particular feature of Burgess' relation to the fire, or to the premises, was so suspect that the court had to single it out. We do not say the jury could not have drawn its own inferences from Burgess' control of demolition and, when the fire occurred, of the premises; but the inference of negligence from those facts was not so manifest as to compel calling it to the jury's attention, with the risk of giving it undeserved prominence. Burgess shared control of the premises with Shapiro. The latter was responsible for turning off the electricity and gas. The fire could have started from gas in the basement; a gas company workman had visited the premises shortly before the day of the fire to cap the pipes. Power remained in the new building, and there was some possibility of an electrical cause. Anyone could have entered the Old Mill from the street and there was perhaps access from the new building. Militating most strongly against any "common-sense" inference was the inability of either party's experts to suggest—apart from the dust explosion theory, which the jury plainly rejected —how the fire began. The possibilities were canvassed in detail at trial. Where the experts had failed, it would have been illogical for the court to specifically point out to the jury that the event might speak for itself.

■ The Massachusetts cases reveal no judicial rule of thumb supportive of plaintiff's contention. Outbreak of a fire is not evidence of negligence on the part of the owner of premises. Little v. Lynn & Marblehead Real Estate Co., 301 Mass. 156, 16 N.E.2d 688 (1938). In Roscigno v. Colonial Beacon Oil Co., 294 Mass. 234, 200 N.E. 883 (1936), the court declined to hold that common knowledge would warrant a finding of the owner's negligence from the mere fact of an explosion in an oil refinery. In Zezuski v. Jenny Mfg. Co., 1973 Mass.Adv.Sh. 475, 293 N.E.2d 875 (1973), the court sustained a jury verdict against a supplier of gasoline for injuries from an explosion occurring during delivery. There is language in *Zezuski* that negligence could be inferred from the supplier's "exclusive control" of the truck and hose, but other evidence supporting the verdict is also cited, and the case most likely reflects the higher duty of care imposed upon those dealing in ultra-hazardous substances. W. Prosser, Torts § 78 (4th ed. 1971). *Cf.* Triangle Dress, Inc. v. Bay State Service, Inc., 356 Mass. 440, 252 N.E.2d 889 (1969). In modern times, the Massachusetts court has most often avoided judicial rules of thumb except in clear cases, *see* Wilson v. Colonial Air Transport, Inc., 278 Mass. 420, 180 N.E. 212 (1932), and has left the jury to its own inferences.

Proposed instructions 2A and 3 which, in large part, were invitations to infer negligence from defendant's purported "exclusive control and possession" were thus properly denied. Request No. 4 added nothing legally necessary to what had been said and was more favorable in tone to plaintiff than the court had to accept. The court was not required to put its thumb to the scales.

■ Request No. 2 was not a *res ipsa* instruction but was based on the recent case of Knowles v. Gilchrist Co., 1972 Mass.Adv.Sh. 1783, 289 N.E.2d 879, holding that a bailee, once a bailor proves delivery, has the burden of proving that he exercised due care to prevent loss of the property. As a possible harbinger it is not without interest. Burgess agreed to demolish the Mill and to leave the new building intact, and might be likened to a bailee who contracts to hold and restore property intact. But we think it impermissible to read *Knowles* as setting down a rule applying not only to bailees but to contractors who, because of fire or other disasters, fail to

**332**

comply with their contract. The court said, "our decision in this case creates only a specific rule for a specific class of cases, bailment for hire", *Id.* n. 4, and its analysis was largely based upon the rules growing up in bailment cases. There are significant differences between a bailee and a contractor like Burgess. While the latter exercises some control, he shares it with others; a bailee, on the other hand, retains exclusive dominion. Whether to extend the *Knowles* rule to contractors is a matter we must leave to the Massachusetts courts.

▪ Finally, we find no error in the court's instruction that there could be no inference of negligence from the mere fact an accident happened, "considered alone, and standing by itself." The instruction did not negate the jury's right to infer negligence from the facts as a whole or any part of them. *See* Carmody v. Boston Gaslight Co., 162 Mass. 539, 39 N.E. 184, 185 (1895).

Affirmed.