Olivero **BUSTAMANTE**, Plaintiff-Appellee,

v.

The **CARBORUNDUM COMPANY**, Defendant-Appellant.

No. 15420.

United States Court of Appeals Seventh Circuit.

March 22, 1967.

Rehearing Denied April 21, 1967.

Albert F. Manion, L. H. Vogel, Chicago, Ill., David F. Holland, Chicago, Ill., of counsel, for defendant-appellant.

James P. Chapman, Philip H. Corboy, Donald Lipman, Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Chief Judge, and CASTLE and FAIRCHILD, Circuit Judges.

HASTINGS, Chief Judge.

Appellee, Olivero Bustamante, instituted a diversity tort action in the district court against the Indiana Harbor Belt Railroad Company, his employer, and the Carborundum Company, to recover damages for personal injuries he sustained in the course of his employment by the railroad while using a product manufactured by Carborundum.

Bustamante's complaint alleged three alternate causes of action. The first, against the railroad company, was settled before trial, the railroad agreeing to pay Bustamante $20,000 upon a covenant not to sue. The second count alleged that Carborundum failed to test its product, a grinding wheel, properly and that Carborundum negligently manufactured it. The third count alleged that Carborundum had breached implied warranties of merchantability and reasonable fitness and that such breach was the proximate cause of Bustamante's injuries.

The case was submitted to the jury under both causes of action, and the jury returned a verdict against Carborundum in the amount of $25,000 (later reduced to $5,000 on motion of Carborundum.)

Carborundum has appealed from the judgment on the verdict in favor of Bustamante and from the denial of its post-trial motions.

Bustamante was employed by the railroad in one of its roundhouses as a grinding machine operator. On October 24, 1961, in the course of his work, he installed a new grinding wheel, manufactured by Carborundum, on his portable grinding machine. The grinding wheel consisted of an eight inch circular steel plate to which an abrasive flat cylinder two inches thick had been bonded by a resin cement. This was attached to the grinding machine by a spindle passing through the center of the wheel. A protective cover, which exposed only the abrasive face of the wheel, was mounted over the wheel.

When using the grinding machine to grind the railroad frog, or track crossover, on which he was working, Bustamante stood astride the frog, bent over at the waist with both hands grasping the protective cover, and moved the grinder horizontally along the frog. With the grinder in this position, the grinding wheel was shielded from Bustamante by the protective cover.

On the day following his installation of the new grinding wheel on his grinder, Bustamante continued to work on the frog. After he had operated the grinder normally for one-half hour, the wheel disintegrated, and a fragment from it seriously injured his arm.

The cause of the disintegration of the wheel was an issue at the trial. Under Bustamante's theory of the case, because of a defect in the wheel, either a fragment broke off the wheel as it was being used, causing an imbalance and further disintegration or the wheel disintegrated spontaneously due to an insufficient or weak bond fixing it to its steel plate.

Carborundum attempted to show that its wheel was safely constructed and properly tested and that the cause of the breakage was not due to defective construction of the wheel. An inference to be drawn from its position was that Bustamante had dropped or misused the grinder, thus causing the breakage himself. Bustamante, however, denied this unequivocally, and no witness could relate whether or not the grinder had been dropped or misused before the accident.

On appeal, Carborundum contends there was no evidence to prove a causal relationship between the alleged defect in the grinding wheel and Bustamante's injury and that there was no evidence to prove Carborundum had failed to test the grinding wheel properly or that it was not reasonably fit for its intended use. It is further asserted that the trial court erred in submitting the case to the jury under a theory of *res ipsa loquitur,* in allowing Bustamante's breach of warranty claims to be submitted to the jury, in overruling objections to hypothetical questions and in limiting cross-examination. Finally, it is contended that the verdict of the jury was contrary to the manifest weight of the evidence.

Carborundum urges that, because of a failure to prove a causal relationship, the trial court committed error in submitting to the jury Bustamante's allegations of specific negligence regarding testing and fitness of the wheel for its intended use.

There was testimony that the phenolic resin used to bond the abrasive wheel to the steel plate backing it was applied to the plate manually, by a spatula. When manufacture of a wheel was completed, Carborundum tested it for weakness and poor adhesion by mounting the wheel on a machine similar to that on which it was intended for use. The wheel was then operated at a speed fifty per cent higher than it would be operated at by a purchaser.

Carborundum's expert testified that the rotational forces created by this test were far in excess of those existing in the instant case. He further testified that as the grinding wheel is consumed in use, the forces normally acting on it decrease. His examination of the fragments of the wheel in the instant case indicated to him that the initial fracture in the wheel took place through the abrasive material itself. The fracture pattern—two diametrical cracks perpendicular to each other, separating the abrasive material into four nearly equally sized pieces—indicated that the wheel had disintegrated at once, that is, no single fragment broke off the wheel first, but the major fragments separated from the wheel at the same time. He was of the opinion that, under the facts of the instant case, some force other than those created in the normal use of the wheel caused the wheel to break.

Professor Kalpakjian, one of Bustamante's experts, testified, in effect, that the bonding agent holding the wheel to the steel plate was not of uniform distribution and strength. This raised the possibility that, if the bond were insufficiently strong, the grinding wheel as a whole might separate from the steel plate when the grinder was being used.

Professor Kalpakjian further testified as to a simple test, tapping on the back of the plate, after the wheel had been bonded to it, in order to discover a difference in sound, whereby separation between the grinding wheel and the plate might have been indicated.

From this brief recital, it can be seen that there was an impasse in the evidence. Bustamante's evidence showed no fault on his part and pointed to Carborundum's manufacture as the cause. Carborundum's evidence disclosed no specific fault on its part and pointed to a cause external to the wheel itself.

■ ·This factual uncertainty is committed to the jury to resolve. The testimony of Professor Kalpakjian, together with the absence of evidence of misuse or negligence on the part of Bustamante or a third party, created a basis from which a jury could infer, without speculation, a cause of the disintegration of the wheel, that is, an inadequacy of the bond, and Carborundum's responsibility for it. We cannot say that the evidence in the record, together with all reasonable inferences to be drawn from it, failed to justify submission of the case to the jury. Cf. Reitan v. Travelers Indemnity Company, 7 Cir., 267 F.2d 66 (1959).

With respect to the question of *res ipsa loquitur,* it is true that formerly in

Illinois *res ipsa loquitur* was held inapplicable in cases in which the instrumentality or agency of injury was not exclusively in the possession or control of the defendant. Further, it has been the rule in Illinois that injury and control being shown, *res ipsa loquitur* created a rebuttable presumption of negligence which vanished when any evidence, such as manufacturing procedure, was presented which tended to exculpate the defendant. However, the recent case of May v. Columbian Rope Co., 40 Ill. App.2d 264, 189 N.E.2d 394, (1963) recognizes and establishes a less restrictive doctrine of *res ipsa loquitur* than formerly obtained.

■ Under *May*, a possession or control of the injuring instrumentality or agency intervening between that of the manufacturer and the occurrence of the injury does not preclude the application of *res ipsa loquitur* in Illinois, unless the length or character of the intervening control indicates that the defect probably did not exist when the manufacturer parted with control. *May,* supra, at 271–273, 189 N.E.2d 394.

As stated by the court:

"The demonstrable trend of these authorities is to determine from the nature of the defective instrumentality and the surrounding circumstances whether the inference of the defendant's negligence is strong enough to survive the fact that, between the defendant's control and the plaintiff's injury, another possession intervened. If a reasonable inference of negligence does survive, liability has been imposed." *May,* supra, at 271, 189 N.E. 2d at 397.

■ The facts of intervening control and possession are jury questions, and it is for the jury to further determine whether the permissive inference of negligence arising from those facts is to prevail over a defendant's countervailing proof of due care. *May,* supra, at 274–275, 189 N.E.2d 394.

■ Thus, the doctrine of *res ipsa loquitur* was not inapplicable in the instant case, and, notwithstanding Carborundum's evidence of due care, the jury was entitled to infer negligence from the facts.

Carborundum states that Bustamante's claim for breach of warranty should not have been submitted to the jury. Citing Paul Harris Furniture Co. v. Morse, 10 Ill.2d 28, 139 N.E.2d 275 (1956), Carborundum asserts that in Illinois, an action for breach of implied warranty is an action sounding in contract, which may be maintained only by a party in privity to the contract of sale.

The cited case plainly does not hold this. It does state that actions for breach of *express* warranties are *ex contractu, Harris,* supra, at 39, 139 N.E.2d 275, but actions for breach of implied warranties of fitness are not so treated.

■ On the contrary, in a case in which it was held that the trial court was in error in striking negligence counts based on the theory of implied warranty, the Illinois court stated the rule that:

"A product that is inherently dangerous or defectively made constitutes an exception to the requirement of privity in an action between the user of the product and its manufacturer." Suvada v. White Motor Co., 51 Ill.App. 2d 318, 325–326, 201 N.E.2d 313, 318 (1964), aff'd 32 Ill.2d 612, 210 N.E.2d 182 (1965). See Brandenburg v. Weaver Mfg. Co., 77 Ill.App.2d 374, 222 N.E.2d 348 (1966).

■ We hold that under Illinois law, the trial court did not err in submitting to the jury the claim for breach of implied warranty.

■ We have examined Carborundum's contentions respecting the overruling of its objections to certain hypothetical questions and the limiting of its cross-examination of Bustamante's experts. We find no merit in these contentions. Nor do we find any merit in the final contention that the verdict of the jury was contrary to the manifest weight of the evidence. The cause of the accident having been put in issue, and evidence having been introduced on

the issue, it was for the jury to find the facts. The jury verdict is not contrary to the manifest weight of the evidence considered as a whole.

The judgment appealed from is affirmed.

Affirmed.