JOSEPH CALVANESE vs. W.W. BABCOCK COMPANY, INC.

Hampden.   September 8, 1980. — November 21, 1980.

Present: ARMSTRONG, BROWN, & GREANEY, JJ.

*Evidence,* Experiment, Medical record, Subsequent accident.   *Negligence,* Manufacturer, Ladder.   *Sale,* Warranty.   *Discovery.*

In an action seeking damages for personal injuries sustained by the plaintiff when he fell from a stepladder manufactured by the defendant, the judge did not abuse his discretion in admitting in evidence the results of tests conducted by the defendant's expert to show that the ladder could not have failed under the normal use described by the plaintiff but that substantially similar damage could be reproduced in an identical ladder by improper loading; the judge was not required to restrict the defendant to the plaintiff's theory as the sole basis for an analysis of causation.   [729-731]

In an action seeking damages for personal injuries sustained by the plaintiff when he fell from a stepladder manufactured by the defendant, the plaintiff was entitled to an instruction that, even if the jury could not find the specific cause of the failure of the ladder, they still could infer that the ladder broke due to the defendant's negligence, from the circumstances of the accident itself, and from the testimony of the intermediate handlers, where there was sufficient evidence to warrant conclusions that the ladder's failure more probably than not had been caused by some negligent act attributable to the defendant and that the ladder had not been improperly handled by the plaintiff or intermediate handlers.   [732-736]

In an action seeking damages for personal injuries sustained by the plaintiff when he fell from a stepladder which had been manufactured by the defendant, sold to a hardware company, and then to the plaintiff's employer, the breach of warranty claim was properly dismissed where the accident occurred prior to the amendment of G. L. c. 106, § 2-318, by St. 1971, c. 670, § 1.   [736]

At the trial of an action for personal injuries, the judge erred in admitting reports of the defendant's neurologist in the absence of the doctor. [736]

At the trial of an action for personal injuries, the judge properly allowed the defendant to introduce evidence of the plaintiff's subsequent acci-

dents to impeach his credibility and to establish their contribution to the plaintiff's physical condition. [736]

At the trial of an action for personal injuries sustained in a fall from a stepladder manufactured by the defendant, no abuse of discretion was shown by the judge's exclusion of a report by the defendant's plant engineer or by his denial of the plaintiff's mid-trial demand for additional photographs of the ladder purportedly contained in the defense counsel's file. [736-737]

CONTRACT AND TORT. Writ in the Superior Court dated May 8, 1967.

The action was tried before *Alberti, J.*

*Louis Kerlinsky* for the plaintiff.

*Thomas J. Donoghue* for the defendant.

GREANEY, J. This is a product liability case, brought on theories of negligence (in manufacture and inspection) and breach of warranty (merchantability) for personal injuries sustained by the plaintiff when he fell from a stepladder manufactured by the defendant, W.W. Babcock Company, Inc. (Babcock). After the plaintiff's opening, the judge, in so far as material here, directed a verdict for the defendant on the warranty claim, and the jury returned a verdict for Babcock on the negligence claim. The plaintiff has appealed. We reverse the judgment on the negligence claim and order a new trial. The judgment on the warranty claim will be affirmed.

The product, an eight-foot wooden mechanic's stepladder, was manufactured by Babcock some time prior to 1963 and sold to Faulkner Hardware Company (Faulkner) on January 15, 1963. Faulkner in turn sold the ladder to the plaintiff's employer, C.F. Church Manufacturing Company (Church), on February 13, 1963. It had been inspected for obvious defects prior to leaving Babcock's plant and again prior to being placed in Faulkner's inventory; none was found. With proper care and use the ladder would last indefinitely. Church purchased the ladder to replace lamps and to adjust air-handling equipment. A Church employee testified that the ladder appeared sound

on the day of the accident and that, to his knowledge, it had not been damaged or subjected to abnormal use while at Church.

The plaintiff, formerly an electrician at Church, testified that on the evening of June 30, 1965, he intended to use the ladder to relocate a light fixture on the second floor. He took the ladder from storage, examined it, and observed that it appeared sound. He opened the ladder on a small second floor balcony adjacent to a stairway, engaged and locked both spreaders, placed the ladder against a railing bordering the balcony, tested the ladder for stability, and started to climb. When he reached the second or third step from the top, there was a sudden "loud cracking and snapping noise and the ladder . . . kicked [him] forward down the cement stairs." The plaintiff lost consciousness and was taken to the hospital. The following morning, the ladder was observed upright but tipped against the balcony railing. Its left rear leg was cracked and completely detached from the top step at a point near the leg's junction with a one-quarter inch steel rivet. There also was some damage to the ladder's left spreader and to its paint tray.

The plaintiff's expert attributed the accident to the buckling of a steel rivet which was designed to anchor the leg to the header. In his opinion, the rivet had been defectively installed during the ladder's assembly,[1] causing a weakness in this member significantly above what would be expected from a properly riveted and attached leg. He theorized that continued use of the product over an approximate two-year period diminished its strength until it was no longer capable of sustaining a normal load. The expert also expressed opinions that Babcock's employees should have discovered the defect and that use or misuse of the ladder would not have caused the rivet to buckle.

---

[1] Specifically, this expert testified that the rivet used for the job was either too long or too hard, or that either the hole designed to accommodate the rivet was too large or the rivet was too small, with the result that the rivet buckled upon insertion, causing a split in the wood.

The defendant's expert testified that he had examined the accident ladder, that it appeared to have been constructed within acceptable limits and to conform to all existing industry codes, and that under normal loading conditions, such as were described by the plaintiff,[2] the ladder would not have failed. Skeptical of the plaintiff's account of his use of the ladder when considered in the light of the damage which resulted,[3] the defendant's expert tested two identical ladders in an effort to duplicate the failure. Two experiments were rejected when they failed to produce similar damage. In the last series of tests, a ladder was placed face down with its paint tray open and one spreader and leg engaged. Application of approximately 200 pounds of weight between the second and third steps from the top caused damage which reproduced "to some degree of accuracy . . . the failure [on the accident ladder]."[4] The damage depicted a torsional type of failure consistent with what might occur if the ladder's user lost his balance while standing on one of the top steps.[5]

1. *The negligence case.* (a) The plaintiff argues that the testimony of the defendant's expert should have been excluded because his tests were conducted under circumstances substantially dissimilar to those prevailing at the time of the accident. We disagree.

---

[2] This opinion was based on the plaintiff's testimony that he weighed approximately 175 pounds at the time of the accident and that he mounted the ladder in the usual manner while wearing a small pouch of hand tools attached to his belt.

[3] This skepticism was based on the evidence in the plaintiff's case as to the normal use of the ladder, as well as the previously recited evidence as to the ladder's history.

[4] Contrary to the plaintiff's argument, the failure achieved by the last tests did show some bending of the rivet. The differences between the damage in the tests and that incurred by the accident ladder were said not to affect the results of the tests or the opinions expressed.

[5] In cross-examination, the expert added the opinion that the damage reproduced by the third test was also consistent with what might happen if the user lost his balance and one leg of the ladder fell down the adjacent stairway.

It is now common in product liability cases to see circumstantial proof in the form of tests offered (typically through experts) for the purpose of proving or disproving the cause of an accident. See *Griffin* v. *General Motors Corp.*, 380 Mass. 362, 365-366 (1980); *Bechtel* v. *Paul Clark, Inc., ante* 685, 688-689 (1980). See also 1 Louisell & Mueller, Federal Evidence § 103 (1977); 1 Frumer & Friedman, Products Liability § 12.02[2] (1980). Admission of such evidence requires that the trial judge weigh its probative value against the possibility that it will prejudice the jury (*Green* v. *Richmond*, 369 Mass. 47, 59-60 [1975]; McCormick, Evidence § 202, at 485-486 [2d ed. 1972]) — an analysis which requires consideration of whether the evidence is relevant, the extent to which the test conditions are similar to the circumstances surrounding the accident, and whether the evidence will confuse or mislead the jury. The final determination "must be largely left to the discretion of the trial judge, and that discretion will not be interfered with unless in its exercise he clearly appears to be wrong." *Griffin* v. *General Motors Corp., supra* at 365. See *Eidt* v. *Cutter*, 127 Mass. 522, 524 (1879); *Commonwealth* v. *Tucker*, 189 Mass. 457, 478 (1905); *Guinan* v. *Famous Players-Lasky Corp.*, 267 Mass. 501, 521 (1929); *Commonwealth* v. *Makarewicz*, 333 Mass. 575, 592 (1956).

The jury were not obliged to accept the plaintiff's version of the accident, and the judge was not required to restrict the defendant to the plaintiff's theory as the sole basis for their analysis of causation. Thus, the defendant was entitled to present evidence that the ladder could not have failed under the normal use described by the plaintiff and that substantially similar damage could be reproduced in an identical ladder by improper loading. This evidence was not designed to show that the accident occurred in the precise manner indicated by the tests but rather to show that the plaintiff's testimony might be inaccurate or untruthful. The evidence was competent for this purpose, and the judge did not abuse his discretion by admitting it. See *Bechtel* v. *Paul Clark, Inc., supra* at 688, and cases cited.

The determination whether the test conditions were sufficiently similar to make the experiments of any value to the jury also rested in the judge's sound discretion. *Commonwealth* v. *Makarewicz,* 333 Mass. at 592-593 (1956). *Griffin* v. *General Motors Corp.,* 380 Mass. at 365-366. The test ladders were identical to the one used by the plaintiff, and differences between the test conditions and those said to be present during the accident did not require exclusion of the evidence as a matter of law. See *d'Hedouville* v. *Pioneer Hotel Co.,* 552 F.2d 886, 890 (9th Cir. 1977). The dissimilarities cited by the plaintiff were thoroughly explored during cross-examination and were all such that the jury could make proper allowance for any effects which might have resulted from them. *Bechtel* v. *Paul Clark, Inc., supra* at 689, citing *Guinan* v. *Famous Players-Lasky Corp.,* 267 Mass. at 522. They went to the weight of the evidence rather than its admissibility.[6]  See *Ramseyer* v. *General Motors Corp.,* 417 F.2d 859, 864 (8th Cir. 1969); *Nanda* v. *Ford Motor Co.,* 509 F.2d 213, 222-223 (7th Cir. 1974). See also 1 Louisell & Mueller § 103, at 776-777 ("[I]t is clear that an opponent who claims that the result of an experiment is traceable to dissimilarities will often in fact be obliged to make his [argument] to the jury"). Contrast *Andrews* v. *Barker Bros.,* 267 Cal. App. 2d 530, 538-539 (1968).[7]

---

[6] Our conclusion that the evidence was properly admitted renders it unnecessary to discuss the argument that the hypothetical question used in the examination of the defendant's expert was improper. After persistent objections by the plaintiff's counsel, the hypothetical was hammered into acceptable form and it was based on matters already in evidence. We also reject the argument that the opinions expressed by the defendant's expert were speculative. Although he did refer at one point in his cross-examination to his theories being possibilities, it is apparent in reading his entire testimony that they rested on reliable data and assumptions that were plausible.

[7] This case is cited to us by the plaintiff as dispositive on the question just discussed. It is readily distinguishable. In that case the chair that collapsed was not available for inspection by the defendant's expert. The test conducted was styled by the court as a "fantastic maneuver" (*id.* at 537), and the ultimate opinions were based on several assumed facts that had no foundation in the evidence. The test results were introduced generally and not mainly on the question of the probability of the plaintiff's testimony, and

(b) The plaintiff seasonally requested an instruction that "[e]ven if the jury [could not] find the specific cause of the failure of the ladder . . . [they] still [could] infer that the ladder broke due to [Babcock's] negligence, from the circumstances of the accident itself, and from the testimony of [the] intermediate handlers." The judge charged solely on the specific theories of negligence raised by the expert testimony and refused to instruct on this theory. The plaintiff registered a timely objection.

According to *Coyne* v. *John S. Tilley Co.*, 368 Mass. 230 (1975) (a case involving the sudden and unexplained failure of a ladder), a plaintiff is entitled to a charge of the sort requested if the evidence, "considered in its entirety and in its light most favorable to the plaintiff" (*Gelinas* v. *New England Power Co.*, 359 Mass. 119, 123 [1971]), would warrant conclusions that (1) the product's failure more probably than not has been caused by some negligent act attributable to the defendant, and (2) the product has not been improperly handled by the plaintiff or intermediate handlers. *Coyne* v. *John S. Tilley, Co., supra* at 235, 237. The first point serves to establish negligence, and the second point, by eliminating other intermediate events as causes, creates the necessary connection between that negligence and the manufacturer's responsibility. *Id.* at 237, and cases cited. "The test is not whether the evidence was such that it required the jury to infer negligence by the defendant, but only whether it was sufficient to permit such an inference." *Gelinas* v. *New England Power Co., supra* at 123. See also *Graham* v. *Badger,* 164 Mass. 42, 47 (1895); *Roscigno* v. *Colonial Beacon Oil Co.,* 294 Mass. 234, 235 (1936).

A wooden stepladder is a relatively uncomplicated and sturdy product, the parts of which are not likely to fail under normal use or to deteriorate from natural causes. We believe it to be within common experience that a properly fab-

---

the status of the tests as evidence was impermissibly expanded by closing argument. Compare *Sheward* v. *Virtue,* 20 Cal. 2d 410, 413 (1942).

ricated stepladder which was designed to provide many years of service and which had received proper care and usage would not mysteriously fail if put to the use for which it was intended. Like the situation in the *Coyne* case, there were numerous conceivable acts which might have contributed to this ladder's unusual failure, including defective manufacture by Babcock, mishandling by a middleman, improper use by Church's employees, or misuse by the plaintiff on the day of the accident. However, there was evidence that the ladder had been constructed with care and precision, that it had been inspected several times at Babcock's plant without any observable defect being found, that it had not been damaged in transit, that nothing happened to it during the relatively short period Faulkner held it in inventory, that it had been used by Church employees for the routine tasks for which it was intended, that it had not incurred any abuse or damage while under Church's control, that it appeared sound on the day of the accident, that defects were not observable, and that the plaintiff had used it in a normal fashion. This evidence, together with the very unusual nature of the fracture, would support an inference that the occurrence would not have happened in the absence of negligence on Babcock's part. It would also support a jury conclusion that negligence on the part of intermediate handlers and the plaintiff[8] had been excluded as probable causes of the ladder's failure.

The circumstances in this case are similar to those in cases involving the unexplained breaking of a rope (*Doherty* v. *Booth,* 200 Mass. 522 [1909]), a cable (*Golden* v. *Mannex,* 214 Mass. 502 [1913]), a chain (*Cushing* v. *G.W. & F. Smith Iron Co.,* 194 Mass. 310 [1907]), a theatre seat (*Couris* v. *Casco Amusement Corp.,* 333 Mass. 740 [1956]), and a staging (*Rice* v. *DeAvilla,* 338 Mass. 793 [1959]) — all

---

[8] On this point, plaintiff's counsel was careful to avoid the stumbling block encountered by the plaintiff in the *Coyne* case, and the plaintiff's evidence included a detailed description of the use being made of the ladder and the attendant circumstances. See *Coyne* v. *John S. Tilley Co.,* 368 Mass. at 239 n.9.

of which were held sufficient to raise the necessary inferences. The cases of *Drum* v. *New England Cotton Yarn Co.*, 180 Mass. 113 (1901), and *Gauld* v. *John Hancock Mut. Life Ins. Co.*, 329 Mass. 724 (1953), are distinguishable for the reasons discussed in *Coyne* v. *John S. Tilley Co.*, 368 Mass. at 236 n.6. In our opinion, there was sufficient evidence to get the theory to the jury.

The defendant points to the fact that the ladder in the *Coyne* case was found to be "bright, new and defect-free" (368 Mass. at 237) in contrast to the ladder in this case, which was depicted as having been subjected to considerable use over a two-year period. From this it is argued that the theory was precluded as a matter of law. We do not agree.

The accident ladder was stated to have an indefinite life span under normal use, and there was no direct evidence that it had ever been misused or severely damaged or that damage had occurred in the area of the fracture. It was not within those classes of products where ordinary use over a number of years would conclusively bar common experience from accounting for an unexplained failure.[9] See *Carney* v. *Sears, Roebuck & Co.*, 309 F.2d 300, 305-306 (4th Cir. 1962). Unless the length or character of the intervening use conclusively eliminates the inference that the defect probably existed when the manufacturer parted with control, the rebutting evidence is for the jury. On the circumstantial evidence in this case, the jury could reasonably have found that the ladder failed when subjected to the stress of a normal man's weight and that the failure was due to the fragility or instability of a connection at the junction of the leg and the header traceable to the ladder's defective or improper assembly by Babcock's employees. Compare *Poirier* v. *Plymouth*, 374 Mass. 206, 209, 213-216 (1978). It

---

[9] Examples would be products powered by internal combustion engines or other motor-operated parts. It also does not fit within the class of products where the number or sophistication of working parts would preclude drawing the inference, nor is it a product which would be expected to deteriorate quickly under normal use.

was thus for the jury to determine "whether the permissive inference of negligence arising from [the circumstantial] facts is to prevail over [the] defendant's countervailing proof." *Bustamante* v. *Carborundum Co.*, 375 F.2d 688, 691 (7th Cir. 1967). See *Doughnut Mach. Corp.* v. *Bibbey*, 65 F.2d 634, 636 (1st Cir. 1933); Prosser, Torts 233-235 (4th ed. 1971). We think that these conclusions are logically implicit in the *Coyne* decision and consequently that it was error for the judge to refuse to instruct on the subject.[10]

Finally, we cannot say that the error was harmless. Nothing prevents a plaintiff from going to the jury on alternative theories of liability, including one which would have warranted recovery on a more generalized inference of negligence. Instructions on both theories would not be confusing — they are not inconsistent, and to a large extent they parallel and supplement each other. See *Cassady* v. *Old Colony St. Ry.*, 184 Mass. 156, 162-163 (1903). Cf. *Pelland* v. *D'Allesandro*, 321 Mass. 387, 388-389 (1947). The charge as delivered essentially confined the jury to consideration of the buckled rivet theory addressed by the experts and it did not tell them that there could be a recovery for negligence established through demonstrated circumstantial facts. Contrast *A. Shapiro Realty Corp.* v. *Burgess Bros.*, 491 F.2d 327, 330-331 (1st Cir. 1974). There is no question that the judge understood that he was being asked to charge alternatively on the theory. A charge in keeping with the request would have focused the jury's consideration on the inferences that could be drawn from the accident itself as distinct from the inferences to be drawn, if any, from the expert testimony. Had the jury accepted the evidence in the plaintiff's case and disbelieved the experts,

---

[10] Our analysis of this question is based on the portions of the transcript contained in the record. There are several excerpts from the testimony set out in the defendant's brief which may have some influence on the judge's determination that he would not charge on the theory. In our view they are not sufficient to override the plaintiff's entitlement to the charge even if they had been properly included in the record. See *Kunen* v. *First Agricultural Natl. Bank*, 6 Mass. App. Ct. 684, 687-692 (1978).

and had they been instructed on the applicable principles, they could reasonably have found, apart from the expert testimony, that the manufacturer was negligent. See *Jiminez* v. *Sears, Roebuck & Co.,* 4 Cal. 3d 379, 386-387 (1971).

2. *The warranty case.* The accident happened in 1965, well prior to the amendment to G. L. c. 106, § 2-318, effected by St. 1971, c. 670, § 1, which removed privity as a barrier to warranty actions. The plaintiff has not reproduced in the record the argument he claims to have made to the trial judge that the warranty claim was subject to construction as stating a claim against Babcock for deceit in the sale of a defective product. See *Roberts* v. *Anheuser Busch Brewing Assn.,* 211 Mass. 449, 451-452 (1912); Swartz & Swartz, Products Liability in Massachusetts, 60 Mass. L. Q. 169, 177-178 (1975). On its face the claim is one only for breach of the warranty of merchantability. The trial judge committed no error in directing a verdict for the defendant on that count of the complaint. See *Swartz* v. *General Motors Corp.,* 375 Mass. 628, 630-631 (1978); *Mansfield* v. *GAF Corp.,* 5 Mass. App. Ct. 551, 555-556 (1977).

3. *Other questions.* We touch briefly on other matters argued before us which may arise again on retrial. It was error to admit the various reports of the defendant's neurologist in the absence of the doctor. The reports did not qualify as hospital records under G. L. c. 233, § 79. Nor were they business records under G. L. c. 233, § 78. Contrast *Poirier* v. *Plymouth,* 374 Mass. at 210-211. In view of the sharp controversy as to medical causation and the multiple opinions contained in the report, this doctor's presence should be required at retrial. Cf. *Kelly* v. *O'Neil,* 1 Mass. App. Ct. 313, 315-317 (1973). The judge properly allowed the defendant to introduce evidence of the plaintiff's subsequent accidents both to impeach his credibility and to establish that they may have contributed to the conditions he is complaining of some fourteen years after the accident. No abuse of discretion has been shown with reference to the judge's exclusion of the plant engineer's report (which has

not been reproduced in the appendix), or in the denial of the attempt at pickpocket discovery made by plaintiff's counsel when he made a mid-trial demand for additional photographs of the ladder purportedly contained in the defense counsel's file. The over-all problem with jury instructions can be obviated if the plaintiff's counsel (a) reduces his requests for instructions to a manageable number and (b) structures them to illuminate the law of the case. Most of his seventy-two requests were attempts to get the court to put a thumb to the scales.

The judgment on count eight of the amended complaint is affirmed. The judgment on count seven of that same complaint is reversed.

*So ordered.*