HALLMARK COLOR LABS, INC. *vs.* DAMON CORPORATION. May 13, 1985.
*Warranty.*

This was a "products liability" case. The company that purchased a machine from the manufacturer sued the latter for fire damage caused by

an alleged breach of an implied warranty of merchantability (G. L. c. 106, § 2-314 [c]). From the judgment after a jury verdict for the defendant, the plaintiff appeals, claiming error in the refusal of the trial judge to instruct in accordance with *Correia* v. *Firestone Fire & Rubber Co.,* 388 Mass. 342, 355-356 (1983).[1]

The machine, powered by electricity, was a "Damon Photo-Spray-Drier" used for applying lacquer protective coatings to photographic prints. It was simple in operation and construction. The operator placed the print on a conveyor belt which carried it into a sprayer box where lacquer (provided to the sprayer box by means of a pump) was sprayed on the print. In a continuous movement, the print was passed into a dryer box. A fan introduced air from outside the machine into the box and elements there heated it to a steady temperature of about 100 degrees Fahrenheit. Two thermostats within the dryer box exercised control to maintain the desired level of temperature. After moving through the dryer box, the dried print was dumped into an external receptor. A thermometer at the side of the machine indicated the temperature within the dryer box.

Upon her arrival on the morning of the accident, February 6, 1981, the operator threw the electric switch and left the area for a period of some forty-five minutes to an hour, counting on the machine to warm up in the meantime. Quite unexpectedly, a short circuit within one of the thermostats burned a one-eighth inch hole in the thermostat housing and propelled a spark or arc of extreme temperature into the interior of the dryer box. This heat ignited the lacquer fumes and dust which evidently had infiltrated the air in the box. An immediate approach to the flames to extinguish them was not possible, and by the time the fire was put out there was damage in the amount (agreed) of $48,000, for which the action was brought.[2]

According to the plaintiff, the damage resulted from a design defect, namely, the location and functioning of the fan in a relation to the rest of the machine that allowed the air in the dryer box to become mixed with lacquer fumes or dust and thereby to create a danger of explosion or fire if overheating should occur or develop within the dryer box. Opinion could differ whether the operator's absenting herself was negligence contributing to the casualty: it was not clear that any condition in the box prior to the incident of the short circuit would have registered on the thermometer so as to give warning that something was amiss. However, the plaintiff wanted a jury instruction that any negligence of this order on the part of the operator was irrelevant, that the plaintiff could recover in full even if such negligence could be found.

---

[1] The plaintiff made the same objection the basis for a motion for a new trial, whose denial is also the subject of appeal.

[2] The defendant Damon Corporation impleaded Fenwal, Inc., the manufacturer of the thermostat, but the trial judge granted Fenwal's motion for a directed verdict; the plaintiff took an appeal but has chosen not to pursue it. The plaintiff joined Western Massachusetts Electric Company as a defendant; it has allowed a directed verdict in favor of Western Massachusetts Electric Company to stand without appeal.

Specifically, the plaintiff requested a charge in the sense of and citing the *Correia* case, which states, with due explanation, that, where breach of warranty is shown, "the user's negligence does not prevent recovery except when he unreasonably uses a product that he knows to be defective and dangerous." 388 Mass. at 356. The same view is taken in Restatement (Second) of Torts § 402A comment n (1965).[3] The plaintiff was entitled to the charge. Apparently the judge refused it on the uniquely temerarious ground that he disagreed with the *Correia* decision.

The judge did charge the jury with regard to "misuse," the doctrine that the warranty claim may be nullified where the user puts the product to use other than the intended one, as where, for example, a glass bottle is hurled at a pole. See *Venezia* v. *Miller Brewing Co.*, 626 F.2d 188, 190-191 (1st Cir. 1980) (applying Massachusetts law). See also *Back* v. *Wickes Corp.*, 375 Mass. 633, 640 (1978); *Correia*, 388 Mass. at 357 n.15. A charge on misuse, however, was not the equivalent of, nor did it subsume, the *Correia* charge about the irrelevance of ordinary negligence. Indeed, as the misuse instruction was given rather flatly, without elaboration, the jury might have taken misuse as carrying a meaning of ordinary negligence on the part of the user. This would contradict the teaching of *Correia*.

The judgment is reversed, and the case will stand for a new trial.

*So ordered.*

The case was submitted on briefs.
*Paul S. Weinberg* for the plaintiff.
*Thomas J. Donoghue* for the defendant.

---

[3] As the *Correia* opinion indicates, some jurisdictions would allow negligence of the user (whether "contributory" or "comparative") to operate as a defense (complete or partial) to a claim based on the breach of warranty. See *Butaud* v. *Suburban Marine & Sporting Goods, Inc.*, 555 P.2d 42, 46 (Alaska 1976); *Daly* v. *General Motors Corp.*, 20 Cal.3d 725, 732-743 (1978); *Coney* v. *J.L.G. Indus., Inc.*, 97 Ill.2d 104, 118 (1983); Twerski, The Use and Abuse of Comparative Negligence in Products Liability, 10 Ind. L. Rev. 797, 804-814 (1977); Shavell, Strict Liability Versus Negligence, 9 J. Legal Stud. 1 (1980).

