# Dana Ducharme *vs.* Hyundai Motor America & others.[1]

No. 96-P-1642.

Worcester. June 2, 1998. - August 28, 1998.

Present: WARNER, C.J., ARMSTRONG, & PORADA, JJ.

*Negligence,* Manufacturer of motor vehicle, Design, Proximate cause, Foreseeability of harm. *Warranty. Evidence,* Expert opinion, Scientific test, Relevancy and materiality.

At the trial of an action involving the crashworthiness of a motor vehicle, error, if any, in the judge's instruction on causation was harmless, where the jury found that the defendant manufacturer was not negligent and did not breach the implied warranty of merchantability. [402-403]

At the trial of negligence and breach of warranty claims involving the crashworthiness of a motor vehicle, the judge's instruction to the jury on reasonable foreseeability of the plaintiff's use of the vehicle was correct [403-404], and her instruction on the manufacturer's duty to use reasonable care in design to eliminate avoidable dangers was adequate, taken as a whole [404-405]; further, the judge's instruction, distinguishing between the claims, that the plaintiff's negligence would not prevent recovery if a breach of warranty were proved unless the plaintiff unreasonably used a product he knew was defective or dangerous, was adequate [405-406].

At the trial of negligence and breach of warranty claims, the judge did not abuse her discretion in excluding as unreliable, after voir dire, testimony of the plaintiff's expert witness [406-407] or in admitting evidence, proffered by the defendant, of a crash test that the judge found to be relevant [407-409].

Civil action commenced in the Superior Court Department on December 22, 1989.

The case was tried before *Barbara A. Lenk,* J., and a motion for a new trial was heard by her.

*James A. Swartz* for the plaintiff.

*Daniel J. Gleason* (*Nelson G. Apjohn* with him) for the defendants.

Warner, C.J. The plaintiff, Dana Ducharme, brought this ac-

---

[1]Hyundai Motor Company and Hyundai Corporation.

tion to recover damages for injuries he sustained in an automobile accident that occurred on the morning of December 23, 1986. Ducharme, who was a nineteen year old college student at the time, suffered multiple injuries, including massive facial injuries and head trauma resulting in total, permanent blindness, when the 1986 Hyundai Excel he was driving left the road traveling at more than forty miles per hour and struck a tree head on.

At trial, Ducharme maintained that he was injured more severely than he would otherwise have been as a result of the alleged negligence and breach of warranty of the defendants, Hyundai Motor America, Hyundai Motor Company, and Hyundai Corporation (collectively referred to as Hyundai), in designing and manufacturing the vehicle. Specifically, Ducharme claimed that the Excel's steering column, A-pillar welds,[2] and seat belt assembly were defectively designed and manufactured. Hyundai maintained that the Excel was properly designed and manufactured in all respects and that it provided as much protection as could reasonably have been expected in an accident of such magnitude. Hyundai further argued that Ducharme would likely have sustained serious injuries in such a crash even in the absence of any defect and that he was negligent for failing to keep the Excel on the road and failing to take evasive measures to avoid striking the tree. Finally, Hyundai claimed that although Ducharme was wearing a seat belt at the time of the accident, he was out of position as a result of falling asleep or some other "significant inadvertence."

After a trial that lasted approximately four weeks, the jury returned a verdict in favor of Hyundai on all counts. In response to special questions, the jury found that Hyundai was not negligent in the design or manufacture of the Excel and that Hyundai did not breach the implied warranty of merchantability. Ducharme subsequently filed a motion for a new trial, which was denied. He now appeals from the judgment entered in favor of Hyundai and from the denial of his motion for a new trial. He challenges the sufficiency of three separate jury instructions, and argues that the judge abused her discretion in ruling on several evidentiary issues. We affirm.

1. *Jury Instructions.* (a) *Causation.* Ducharme first challenges the adequacy of the instruction on causation. He argues that the

[2]An A-pillar is the metal pillar between the front windshield and the side window of the vehicle.

judge erred in instructing the jury that he was required to prove some enhanced injury in order to recover because his injury, that is, his blindness, is indivisible. The question of causation, however, was never addressed by the jury in light of their findings that Hyundai was not negligent and did not commit a breach of the implied warranty of merchantability. Thus, "any error in the instruction was rendered harmless." *Pemberton* v. *Boas*, 13 Mass. App. Ct. 1015, 1017 (1982).

(b) *Foreseeable product use.* Ducharme next contends that the instructions erroneously misled the jury into believing that the circumstances surrounding the accident in which he was injured were unforeseeable. In this regard, he first contends that the breach of warranty instruction runs afoul of the Supreme Judicial Court's decision in *Back* v. *Wickes Corp.*, 375 Mass. 633, 640 (1978). We disagree.

With respect to the breach of warranty claim, the judge instructed the jury that Ducharme had the burden of proving "that at the time of his injury, he was using the [Excel] in a manner that the defendant intended or reasonably could have foreseen." She further stated:

> "With respect to automobiles, collisions are considered to be reasonably foreseeable uses of the product. The requirement that the plaintiff's use of the product was reasonably foreseeable means that the manufacturer is not obliged to design against bizarre, unforeseeable accidents, but the manufacturer is obliged to anticipate the environment in which its product will be used, and it must design against the reasonably foreseeable risks attending the product's use in that setting."

Ducharme maintains that the use of the word "bizarre" suggested to the jury that the accident was somehow unusual and, therefore, unforeseeable to the defendants. We think the instruction accurately conveyed to the jury the elements required to establish a plaintiff's prima facie case in a breach of warranty action. See *Allen* v. *Chance Mfg. Co.*, 398 Mass. 32, 34 (1986) ("to prove his case a plaintiff asserting a . . . claim based on a breach of an implied warranty of merchantability must prove that at the time of his injury he was using the product in a manner that the defendant seller, manufacturer, or distributor reasonably could have foreseen"). Indeed, the challenged language

was taken directly from *Back* v. *Wickes Corp.*, 375 Mass. at 640-641, the case upon which Ducharme relies in support of his claim. Moreover, we discern no risk that the judge's use of the word "bizarre" could have misled the jury into concluding that the accident was unforeseeable in light of the judge's express instruction to the contrary.

Ducharme also contends that the negligence instruction was prejudicial and misleading. "A manufacturer is under a duty to use reasonable care to design a product that is reasonably safe for its intended use." *Everett* v. *Bucky Warren, Inc.*, 376 Mass. 280, 287 (1978), quoting from Prosser, Torts § 96, at 645 (4th ed. 1971). See *Back* v. *Wickes Corp.*, *supra* at 643 (standard of care applicable to manufacturer in negligence claim is that "of the ordinary, reasonably prudent manufacturer in like circumstances"). Taken as a whole, the charge, which repeatedly emphasized Hyundai's duty to anticipate and evaluate the foreseeable risks associated with the Excel's use and to act reasonably to eliminate avoidable dangers, adequately explained this principle to the jury.[3] See *Torre* v. *Harris-Seybold Co.*, 9 Mass. App. Ct. 660, 679 (1980) ("a good objection [to the

---

[3]In describing a manufacturer's duty of care, the judge instructed the jury as follows:

"In this case you are asked to consider whether the Hyundai defendants exercised that degree of care which an ordinary, reasonably prudent manufacturer would have exercised in like circumstances. . . . You're instructed that as a matter of law Hyundai owed the plaintiff a duty to exercise reasonable care in the design of the 1986 Hyundai Excel such that the car would be free from avoidable and foreseeable dangers to the users of the car. A manufacturer of a product which the manufacturer knows or should know is dangerous by nature or is in a dangerous condition or is likely to become dangerous owes a duty to exercise reasonable care to prevent injury to those persons who it is foreseeable will come in contact and consequently be endangered by that product. The manufacturer's duty is one of reasonable care, not perfection. A product is not defective simply because when used properly it causes injury. A manufacturer does not breach its duty of reasonable care simply because the product may cause injury to somebody using the product in an improper or unforeseeable manner. The law requires only that a product be reasonably safe.

"The defendant is held to that standard of care which the ordinary, reasonably prudent automobile manufacturer would have exercised in like circumstances. The degree of care owed to the plaintiff . . . is commensurate with the probable harmful consequences that might reasonably be expected to result from the lack of such care. A

charge] will lie only if a critical issue was not dealt with at all or was dealt with erroneously as a matter of law"). Contrast *Yates* v. *Norton Co.*, 403 Mass. 70, 77 (1988) ("judge's instruction injected confusion into the jury's deliberations on the negligence count by improperly instructing them that a finding of an unforeseeable, improper, or abnormal use of the [product] . . . would, by itself, warrant a 'finding in favor of the [defendant]' " [citation omitted]).

(c) *Knowledge of the alleged defect.* Ducharme next argues that the judge erred in instructing the jury that he could not recover on his breach of warranty claim if he knew that the Excel was defective or dangerous. He contends that the instruction should not have been given because nothing in the evidence suggested that he had such knowledge. Although not explicitly referenced in Ducharme's brief, the challenged instruction appears to be the following:

> "[T]he warranty liability issue does not focus on the conduct of the user, but rather solely on the issue of whether the product was defective and unreasonably dangerous. Given this focus, the only duty imposed on the user in a warranty action as distinguished from a negligence action is to act reasonably with respect to the product which it [*sic*] knows to be defective or dangerous."

When considered in the context of the entire charge, the instruction was adequate. See *Torre* v. *Harris-Seybold Co.*, 9 Mass. App. Ct. at 678 (adequacy of instruction must be determined by examining charge as a whole). Rather than constituting an improper instruction on the "*Correia* defense" as Ducharme contends, see *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 355-356 (1983), it appears that the judge included the challenged language only to illustrate to the jury the fundamental difference between the negligence claim, on which

manufacturer . . . has a duty to the foreseeable users of the product to design its product with reasonable care in order to eliminate dangers that are avoidable and unreasonable. Reasonable care requires the designer to anticipate the environment in which its product will be used and to design against the reasonably foreseeable risks and to eliminate avoidable dangers attending the product's use in that setting. The precise manner in which the harm occurs does not have to be foreseen."

she had previously charged, and the breach of warranty claim: that "where [a] breach of warranty is shown, 'the user's negligence does not prevent recovery except when he unreasonably uses a product that he knows to be defective and dangerous.' " *Hallmark Color Labs, Inc.* v. *Damon Corp.*, 20 Mass. App. Ct. 909, 911 (1985), quoting from *Correia, supra* at 356.

2. *Evidentiary Issues.* (a) *Noncompliance with Federal Motor Vehicle Safety Standard 208.* Ducharme maintains that the judge abused her discretion in refusing to permit his expert, John Stilson, to testify that the Excel did not comply with the requirements of Federal Motor Vehicle Safety Standard 208, 49 C.F.R. § 571.208 (1997) (FMVSS 208). In response to a motion in limine filed by Hyundai, the judge initially ruled that Stilson's testimony was admissible. She subsequently reversed her ruling, however, after reading a case recently decided by the United States Court of Appeals for the Seventh Circuit, *Bammerlin* v. *Navistar Intl. Transp. Corp.*, 30 F.3d 898 (7th Cir. 1994). Ducharme claims that the judge misconstrued *Bammerlin*, and that the resulting error was especially prejudicial to his case in light of testimony offered by Hyundai indicating that the Excel did comply with FMVSS 208. There was no error.

"The trial judge has a significant function to carry out in deciding on the admissibility of a scientific expert's opinion." *Commonwealth* v. *Lanigan*, 419 Mass. 15, 25 (1994). "[B]efore admitting [such] expert testimony, [the judge should assure himself] . . . that the expert knows whereof he speaks." *Bammerlin* v. *Navistar Intl. Transp. Corp.*, 30 F.3d at 901, citing *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). "This entails a preliminary assessment of whether the reasoning or methodology underlying the [proffered opinion] is scientifically valid and . . . whether [it] . . . properly can be applied to the facts in issue." *Commonwealth* v. *Lanigan, supra* at 26, quoting from *Daubert, supra* at 592-593.

During voir dire, Stilson described in detail his understanding of the objective criteria used in conducting crash tests and evaluating test results pursuant to FMVSS 208.[4] Stilson further testified that in his opinion, Ducharme's Hyundai Excel would not have satisfied FMVSS 208's requirements for occupant

[4]Stilson discussed, among other things, the requirement that a vehicle satisfy certain head, chest, and knee injury criteria, and the use of anthropomorphic dummies equipped with "different types of accelerometers or instrumentation" used to measure and compute "all of the information

protection. He offered no objective evidence to support his conclusion, however, and subsequently conceded that in forming his opinion, he had not employed any of the objective criteria specified in the FMVSS 208 test protocol.[5] Indeed, it appears that Stilson's opinion was based solely on his review of crash test reports involving other Hyundai Excels, all of which conformed with the requirements of FMVSS 208, and his post-collision inspection of Ducharme's vehicle. Because Stilson's purely subjective opinion appears to have been based on nothing more than conjecture, surmise, and speculation, it was properly excluded pursuant to the judge's "gatekeeper" function against unreliable expert testimony.[6] *Commonwealth* v. *Lanigan, supra* at 26 ("If the process or theory underlying a scientific expert's opinion lacks reliability, that opinion should not reach the trier of fact"). See *Goffredo* v. *Mercedes-Benz Truck Co.*, 402 Mass. 97, 103 (1988) (expert's opinion, based in part on assumptions as to force and distance which he could not measure, was speculative and, therefore, without probative value). Contrast *Vassallo* v. *Baxter Healthcare Corp.*, 428 Mass. 1 (1998).

(b) *Evidence of crash tests.* Ducharme also claims that the judge abused her discretion in permitting Hyundai's expert, Lee Carr, to testify regarding a crash test performed by a company called Failure Analysis Associates. The actual test, which was not admitted in evidence, was performed according to specifications provided by Carr. Ducharme contends that the conditions under which the test was performed were not similar to those prevailing at the time of his accident, and that it was, therefore,

---

concerning speed, forces, energy and head injury criteria." He described the entire process as "a very complex concept."

[5]The following exchange occurred during cross-examination:

> *Q*:   "You agree with me you don't have the objective data that is specified in the [FMVSS 208] test procedure?"
>
> *A*:   "I do not have the objective instrumented data, that's true."
>
> *Q*:   "And when the federal government runs these tests, they use instrumented data, do they not?"
>
> *A*:   "Yes."

[6]Conversely, the actual crash test reports offered by Hyundai and admitted without objection, which certified that the 1986 Hyundai Excel complied with the objective criteria set forth in FMVSS 208, were properly admitted.

inadmissible. He argues, therefore, that Carr should not have been permitted to testify regarding the results of the test. See *Department of Youth Servs.* v. *A Juvenile,* 398 Mass. 516, 531 (1986) (expert may base an opinion on "facts or data not in evidence if the facts or data are independently admissible and are a permissible basis for an expert to consider in formulating an opinion").

The standard for admissibility of demonstration evidence does not require precise replication. See *Calvanese* v. *W.W. Babcock Co.,* 10 Mass. App. Ct. 726, 730-731 (1980). "Evidence of tests or experiments, which do not exactly replicate the conditions giving rise to the alleged injury, are admissible upon a showing of . . . substantial similarity between experimental conditions and the conditions that gave rise to the litigation." *Welch* v. *Keene Corp.,* 31 Mass. App. Ct. 157, 166 (1991), citing *Griffin* v. *General Motors Corp.,* 380 Mass. 362, 365-366 (1980). "It lies within the discretion of the trial judge to determine whether an experiment, demonstration or reenactment sufficiently resembles the actual event so as to be fair and informative." *Terrio* v. *McDonough,* 16 Mass. App. Ct. 163, 173 (1983).

During voir dire, Carr testified that he intentionally placed the test dummy upright in the seat even though he believed that Ducharme was slumped in his seat, in order to demonstrate the physical principle that the dummy would continue to move forward following impact until something stopped it, as well as to illustrate that a properly restrained occupant in the upright position would not have hit the steering wheel. Thus, the challenged evidence was not offered "to show that the accident occurred in the precise manner indicated by the test[]" but to demonstrate, in part, that the plaintiff's version of events might be inaccurate. *Calvanese* v. *W.W. Babcock Co.,* 10 Mass. App. Ct. at 730. "The evidence was competent for this purpose, and the judge did not abuse [her] discretion by admitting it." *Ibid.* The additional differences cited by Ducharme, between the test conditions and the circumstances surrounding the accident,[7] "did not require exclusion of the evidence as a matter of law."

_____

[7]Ducharme argues that the test vehicle's speed of 46.8 miles per hour differed markedly from the actual speed of his vehicle when it hit the tree, and that the type of barrier used in the test, a twenty inch steel pole filled with concrete and covered with plywood, was substantially dissimilar from the tree in question. The evidence adduced at trial, however, indicated that Du-

*Id.* at 731. Rather, Ducharme was entitled to cross-examine Carr regarding the alleged discrepancies and to argue to the jury that his opinions should be rejected as a result of his reliance on the flawed test.[8] See *Bechtel* v. *Paul Clark, Inc.*, 10 Mass. App. Ct. 685, 689 (1980) ("dissimilarities affect the weight of the evidence and not its admissibility").

The judgment in favor of Hyundai and the order denying the motion for a new trial are affirmed.

*So ordered.*

charme's vehicle was traveling somewhere between forty-one and forty-seven miles per hour when it struck the tree, which measured approximately eighteen to twenty-two inches in diameter.

[8]Ducharme also contends that the admission of videotape evidence depicting barrier impact tests conducted for the National Highway Traffic Safety Administration under its new car assessment program, involving several 1985 and 1986 vehicles, was erroneous. Although Ducharme filed a motion in limine seeking to preclude the admission the tape, he subsequently failed to object when it was introduced. Accordingly, the issue is not properly before us on appeal. See *Commonwealth* v. *Keniston*, 423 Mass. 304, 308 (1996) (an "unsuccessful motion in limine . . . is 'insufficient to preserve appellate rights where . . . there was no objection at trial to the introduction of evidence' " [citation omitted]).