Brassard, J.
Plaintiff, Albert G. Moore, has commenced suit against defendant, General Motors Corporation, seeking to recover for injuries that he sustained as a result of a motor vehicle accident. Specifically, plaintiff álleges that the fuel system design of his motor vehicle, a 1984 Oldsmobile Toronado, is defective. Defendant has moved to exclude the testimony of plaintiffs prospective expert witness, Lewis C. Barbe (“Barbe”) on the basis that his testi *143 mony is inherently unreliable. Both parties submitted extensive and helpful papers in connection with the motion. The court conducted an evidentiary hearing on August 16, 2000. Mr. Barbe was unable to testify because of a commitment in California. The court concludes that his live testimony is unnecessary for resolution of this motion. For the following reasons, defendant’s motion is ALLOWED.
BACKGROUND
On October 19, 1993, plaintiff was involved in a motor vehicle accident at a Citgo Gas Station in Framingham, Massachusetts. At the time of the accident, plaintiff was refueling his 1984 Oldsmobile Toronado at a self-serve gas pump. The fuel filler for plaintiffs motor vehicle was located underneath the rear license plate, and consequently, plaintiff was required to stand behind his motor vehicle in order to refuel it. While plaintiff was refueling his motor vehicle, another motor vehicle approached plaintiff, failed to stop, and crushed plaintiffs legs between the bumpers of the two motor vehicles. Plaintiff sustained serious injuries as a result of this accident.
Plaintiff intends to call Barbe as an expert witness at trial. Barbe is a safety engineer, registered in Massachusetts as well as California. He received a Bachelor of Science in Fire Protection and Safety Engineering from the Illinois Institute of Technology and has held positions such as the Director of Engineering at Occupational Safety & Health Services, Inc. and the Safety Engineer at Stanray Corporation. Barbe will testify that the design of the 1984 Oldsmobile Toronado is unsafe and defective because the fuel filler is located in the center rear of the motor vehicle rather than on the side of the motor vehicle. Plaintiff asserts that this opinion is based on a variety of factors, including a methodology which plaintiff maintains requires the conclusion that defendant should have taken corrective action to redesign the position of the fuel filler of the 1984 Oldsmobile Toronado. Plaintiff argues that this methodology is universally accepted as reliable by the engineering community, including the Society of Automotive Engineers (“SAE”), in determining potential failure mode. Plaintiff argues that Barbe’s methodology is the technical equivalent of SAE J-1739,[1] an analysis entitled Potential Failure Mode and Effects Analysis (“FMEA”).[2] The SAE J-1739, which provides guidelines recommended by the SAE explaining how to conduct an FMEA, was developed by Chrysler, Ford, and General Motors under the sponsorship of the United States Council for Automotive Research.
This SAE J-1739 involves determining a Risk Priority Number (“RPN”) based on three factors: (1) severity; (2) occurrence; and (3) detection. Each factor is analyzed on a scale from one to ten. For severity, the number represents the effects of a failure and assumes that failures occur; for occurrence, the number represents how likely it is that the problem will occur; and for detection, the number represents how likely it is that the problem will be detected. The resulting numbers are then multiplied together. The final number, the RPN, will range from one to one thousand. If the RPN is high, the manufacturer should undertake efforts to reduce this calculated risk through corrective actions. In addition, the last sentence of this analysis states: “In general practice, regardless of the resultant RPN, special attention should be given when severity is high.”[3]
Barbe performed a potential failure mode and effects analysis as to the location of the rear fuel filler in the 1984 Oldsmobile Toronado. His analysis consisted only of evaluating the severity factor and assigning the severity factor a ten. He did not perform any analysis of the other two factors and consequently, did not multiply the numbers together as directed by the guidelines.
Barbe will also testify that his opinion that the design of the fuel filler is defective is based on (1) his education, background, skill and experience as a safety engineer; (2) his awareness of the facts surrounding the accident; and (3) his examination of the safety of various specific motor vehicle refueling systems. Barbe will testify that based on these facts, the design of the fuel filler in the rear of the motor vehicle created a “zone of danger.”
DISCUSSION
Defendant argues that Barbe’s expert testimony should be excluded because his testimony is inherently unreliable. When considering the admissibility of expert testimony, the trial judge must act as the “gatekeeper” and decide whether the evidence will assist the trier of fact to understand the evidence to determine a fact in issue. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 588 (1993).
In order for the court to properly allow an expert to testify at trial, the party seeking the expert’s testimony must satisfy a two-pronged test: (1) relevancy and (2) reliability. Under the first prong, relevancy, the party must demonstrate that the prospective expert testimony has “a valid scientific connection to the pertinent inquiry as a precondition to admissibility.” Daubert, 509 U.S. at 592; Theresa Canavan’s Case, 2000 WL 1160727 at *5-6 (Mass. August 17, 2000). Under the second prong, reliability, the party must demonstrate that the prospective expert testimony is “supported by appropriate validation.” Daubert, 509 U.S. at 590, Theresa Canavan’s Case, 2000 WL 1160727 at *5-6 (Mass. August 17, 2000)).
In addition to satisfying this two-pronged test, it is also necessary that the party establish the prospective witness’s competency as an expert witness. See Letch v. Daniels, 401 Mass. 65, 68 (1987) (court stated that professional specialty of expert medical witness did not have to precisely match the field at issue and thus the "opinion of a general practitioner on a specialized *144 medical issue may be admissible). Barbe’s background and experience as a safety engineer are such that the court concludes that he would be a competent witness.
In the present case, the relevancy of Barbe’s testimony as an expert is not disputed. Thus, this court need not address the first prong. The second prong of the test is discussed below.
It is well established that when determining the reliability of an expert witness, four non-exhaustive factors maybe considered: (1) whether the theory has been subjected to peer review and publication; (2) whether the theory has been tested; (3) whether the theory has a known error rate; and (4) whether the theory has general acceptance in the scientific community. Daubert, 509 U.S. at 593-94; Commonwealth v. Lanigan, 419 Mass. 15, 25 (1994). General acceptance in the relevant scientific community continues to be the most critical factor. Theresa Canavan’s Case, 2000 WL 1160727 at *6; Lanigan, 419 Mass, at 26. Ultimately, an expert must establish that his opinions “have a reliable basis in the knowledge and experience of his discipline.” Daubert, 509 U.S. at 592. This standard is satisfied if the expert witness demonstrates that his opinions “have been arrived at in a sound and methodologically reliable fashion.” Ruiz-Troche v. Pepsi-Cola of Puerto Rico, 161 F.3d 77, 85 (1st Cir. 1998); See Daubert, 509 U.S. at 590; Theresa Canavan’s Case, 2000 WL 1160727 at *5-6.
After review of the papers, and after the hearing, this court concludes that Barbe’s opinions do not satisfy any of the factors set forth in Daubert, supra. For example, Barbe did not subject his theory to peer review; he did not conduct any tests supporting his theory; he did not locate or even review any literature supporting his theory; he did not adduce evidence supporting general acceptance in the scientific community. Barbe maintains that he did not perform the entire SAE J-1739 test because he was not required to, referring to the guidelines for the test which state that “(i]n general practice, regardless of the resultant RPN, special attention should be given when severity is high” and “a reduction in Severity Ranking index . . . can be effected only through a design change.” Barbe takes the position that this language indicates that the presence of a severity factor of ten makes it unnecessary to complete the analysis.
Barbe did not follow the procedure set forth in the SAE J-1739 when he performed the FMEA. He ignored every step except the assigning of a number to represent the “severity.”[4] He did not follow the procedure based on his subjective interpretation of the SAE J-1739. He has applied his subjective analysis to an objective test. Furthermore, his opinion is based on virtually no analysis. The short exercise of even assigning a severity number was his only work contained in'his FMEA. The remaining information contained in his FMEA is simply reproduced selections of the SAE J-1739.
In Ducharme v. Hyundai Motor America, 45 Mass.App.Ct. 401, 406-07 (1998), a motorist brought suit against Hyundai Motor America for breach of warranty and negligence. The plaintiff argued that the court erred when it excluded the testimony of his expert witness. The expert witness would have testified that the motor vehicle did not comply with the Federal Motor Vehicle Standard 208, 49 Code Fed. Regs. §571.208 (1997) (FMVSS 208). During voir dire, the expert witness offered no objective evidence in support of his opinion. He conceded that he had not applied any of the objective criteria set out in the FMVSS 208 test protocol. The Appeals Court affirmed the exclusion of this expert witness because it was clear that the expert witness’s conclusions were “based on nothing more than conjecture, surmise, and speculation.” Ducharme, 45 Mass.App.Ct. at 407. Similar to Ducharme, Barbe’s conclusion in the present case is based on his subjective analysis of how to properly perform a FMEA following the SAE J-1739.
Plaintiff argues that Barbe’s education, background, and experience as a safety engineer enable him to conclude, reliably, that the design is defective. See Ford Motor Co. v. Aguiniga, 9 S.W.3d. 252, 264 (Tex.Ct.App. 1999) (expert witness’s proper performance of an objective test of a fuel pump satisfied “general reliability test” and there was not an analytical gap between the data and the expert witness’s opinion). Barbe’s education, background, and experience as a safety engineer qualify him as a competent expert. They do not, however, qualify his opinion as reliable. “That a person qualifies as an expert does not endow his testimony with magic qualities.” Thereasa Canavan’s Case, 2000 WL 1160727 at *5, quoting Boston Gas Co. v. Assessors of Boston, 334 Mass. 549, 579 (1956). This court concludes that Barbe’s analysis is subjective and that his opinion is unreliable.
ORDER
For the foregoing reasons, it is hereby ORDERED that Defendant’s motion to exclude the testimony of plaintiffs expert witness is ALLOWED.

 Issued in July 1994.

The SAE J-1739 defines a FMEA as the “manner in which a component, subsystem, or system could potentially fail to meet the design intent." It is a group of activities intended to: (a) recognize and evaluate the potential failure of a product process and its effects; (b) identify actions which could eliminate or reduce the chance of potential failure occurrence; and (cj document the process. Its purpose is to supplement the general design process by identifying positively what a design must do to satisfy the customer.

The FMEA also indicates that it is important that this analysis is performed as early as possible, i.e., before a suspect design is unknowingly designed into a product.

Defendant asserts that Barbe performed this step incorrectly because he assigned -a severity number based on the likelihood of the failure occurring, not based on the effects, assuming that the failure occurs. See aff. of McCarthy, Exhibit I.